IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMIE MICHELLE WEST, aka JAMIE MICHELLE JONES, an individual,

        Plaintiff,

   v.

LEGACY HEALTH, a corporation,

        Defendant.

No. 3:22-cv-01823-HZ

OPINION & ORDER

Caroline Janzen
JANZEN LEGAL SERVICES, LLC
4550 SW Hall Blvd
Beaverton, OR 97005

   Attorney for Plaintiff

Brenda K. Baumgart
Melissa J. Healy
Matthew A. Tellam
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205

   Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Jamie Michelle West brings this employment discrimination case against her former employer, Defendant Legacy Health. Plaintiff alleges Defendant violated Title VII and Oregon Revised Statute § ("O.R.S.") 659A.030 by failing to reasonably accommodate her religious beliefs when she objected to taking the COVID-19 vaccine. Defendant moves for summary judgment on Plaintiff's claims. For the reasons that follow, the Court denies Defendant's motion.

## BACKGROUND

This case arises out of Plaintiff's request for a religious exception to Defendant's COVID-19 Vaccination Policy. Compl. ¶ 9, ECF 1. Defendant is a major regional healthcare system in Oregon and Washington. Muller Decl. ¶ 4, ECF 18. Plaintiff is a former Registered Nurse Case Manager at Defendant's Salmon Creek Medical Center. Compl. ¶ 5; Baumgart Decl. Ex. 1 ("Pl. Dep.") 56:3-6, ECF 16.

In March 2020, the COVID-19 outbreak was declared a global pandemic. Defendant sought to limit COVID-19's spread within its facilities, including between employees and between patients and employees. Muller Decl. ¶ 8. Safety measures evolved as the pandemic progressed and included the use of Personal Protective Equipment ("PPE"), testing, temperature checks, self-reporting illness or symptoms, social distancing, and various hygiene protocols such as hand hygiene, environmental disinfection, and room air changes. *Id.* ¶ 8. Despite these efforts, COVID-19 related hospitalizations and deaths continued to grow. *Id.* ¶ 10. By late 2020, Defendant had to use refrigerated semi-truck trailers as overflow morgues for deceased patients. Muller Decl. ¶ 10, Ex. 3.

2 – OPINION & ORDER

Then, in December 2020, the FDA issued its first Emergency Use Authorizations for the COVID-19 vaccine, followed by full FDA approval of two of the vaccines by August 2021 and January 2022. Baumgart Decl. Ex. 2 (Cohen Rep.) ¶ 22; Muller Decl. Ex. 5 at 1. Soon after the vaccine was approved, Defendant received its first shipment of vaccines and began administering them by prioritizing employees who worked in units with a high risk of exposure. Muller Decl. ¶¶ 13–14, Exs. 5–8. In August 2021—after vaccination rates among employees plateaued and the new, more transmissible delta variant arrived in Oregon—Defendant enacted its Vaccination Policy requiring all Legacy "caregivers" to become fully vaccinated or have an approved exception by September 30, 2021. *Id*. ¶ 25. The policy permitted religious and medical exceptions to the vaccine requirement, which were reviewed by a "Vaccine Exemption Working Group." *Id*. ¶ 29. Around this time, the States of Oregon and Washington also established requirements for healthcare workers to be fully vaccinated or have a documented religious or medical exemption in place. Wash. Proclamations 21-14, 21-41.1; OHA, Temp. Admin Order PH 38-2021 (Aug. 25, 2021); *see also* Or. Admin. R. ("OAR") 333-019-1010;

Defendant adopted the vaccination requirement in part because the "scientific consensus" at the time was that "vaccines were safe and highly effective at preventing infection and reducing cases of severe illness and death." Muller Decl. ¶ 28. Defendant also concluded that having unvaccinated individuals work on-site was too great a health and safety risk, particularly given the hundreds of exception requests it received. *Id*. ¶¶ 30, 31 ("[T]he [Senior Leadership Team] was cognizant of the fact that transmissions were still occurring even as Legacy took all appropriate steps to prevent them."). Some patients, for example, were so vulnerable that "commonplace items such as fresh flowers or fruit [could not] be placed in their rooms." *Id*. ¶ 31.

3 – OPINION & ORDER

As a result of the vaccine requirement, 96% of Defendant's employees were fully vaccinated by October 2021. *Id.* at Ex. 26.

Plaintiff worked as a Registered Nurse Case Manager in an orthopedic and surgical unit. Pl. Dep. 44:11-15, 58:20-59:1; Compl. ¶ 5. Plaintiff worked primarily in an office setting, where most of her duties did not involve direct patient interactions. Pl. Decl. ¶ 1, ECF 24. However, her role also required some direct interactions with patients, social workers, and other medical providers. Pl. Dep. 59:3-15. Her responsibilities included overseeing patients' discharge plans, meeting with each patient in person to discuss their plan, and collaborating with the skilled nursing and hospital coordinators. Pl. Dep. 59:3-24.

On August 17, 2021, Plaintiff submitted a religious exception request to the Vaccination Policy. Pl. Dep. 175:23-176:4, Ex. 14. On September 27, 2021, Defendant denied Plaintiff's exception request. Pl. Dep. 182:12-15, Ex. 15. Defendant provided Plaintiff with three options: (1) get vaccinated, (2) resign from her position, or (3) take no action and be placed on administrative leave. Pl. Dep. Ex. 15. After being placed on leave, Plaintiff's employment was terminated for non-compliance with the Vaccination Policy on December 2, 2021. Pl. Dep. 215:8-17, Ex. 19.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims under Title VII and O.R.S. 659A.030 for failure to reasonably accommodate her religious beliefs.[1] Defendant argues that it could not have reasonably accommodated Plaintiff without undue hardship because Plaintiff worked exclusively in a hospital setting in close contact with vulnerable patients and other employees. Def. Mot. 21, ECF 15.

---

[1] For the purpose of this motion, Defendant does not contest "(1) the sincerity of Plaintiff's asserted religious beliefs; (2) the religiosity of Plaintiff's purported beliefs; and (3) whether those beliefs conflict with the Vaccination policy." Def. Mot. 19.

5 – OPINION & ORDER

To establish religious discrimination on the basis of a failure to accommodate theory, a plaintiff must set forth a prima facie case that (1) they had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) they informed the employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected them to an adverse employment action because of their inability to fulfill the job requirement. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). Once the prima facie case is established, the burden then shifts to the defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* at 606 (citations omitted); *see also EEOC v. Townley Eng'g & Mfg. Co.,* 859 F.2d 610, 615 (9th Cir. 1988) (holding the "burden of attempting an accommodation rests with the employer rather than the employee"). Whether an accommodation constitutes an undue hardship is a "fact-specific inquiry" that "is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 143 S.Ct. 2279, 2281 (2023).

As a preliminary matter, the Court will not second guess Defendant's belief in the efficacy of the vaccine. This was a time of crisis. Defendant was justified in determining vaccines were required and that they created a safer environment for its patients. And even if the Court were to accept the testimony of Dr. French, an emergency room physician with experience setting up COVID-19 prevention protocols for hospitals, his discussion of the success of other protocols at unnamed facilities in California and Hawaii does not reasonably cast doubt on Defendant's evidence as to its own facilities in Portland. *See* French Decl. ¶¶ 8, 9, 12, ECF 25. In addition, the journal articles and scientific reports relied on by Dr. French regarding vaccine efficacy are either misconstrued by Plaintiff or irrelevant to the Court's analysis. Most were

published months after the time Defendant made the relevant decisions in this case, *see* French Decl. Exs. 4, 6–8, leaving two that are temporally relevant to Defendant's vaccine mandate, French Decl. Exs. 2, 3. Of those, one is a case study of a COVID-19 outbreak at a large public event where a large number of fully vaccinated persons were infected. French Decl. Ex. 2. The report explicitly states that the "data . . . are insufficient to draw conclusions about the effectiveness of COVID-19 vaccines against SARS-CoV-2." *Id.* at 3. And the other provides support for Defendant's decision: "Vaccination reduces the risk of delta variant infection and accelerates viral clearance." French Decl. Ex. 3 at 1. The plaintiffs in other cases have already been warned about misconstruing these reports. *See Zimmerman v. PeaceHealth*, 701 F.Supp. 1099, 1113 (W.D. Wash. 2023) (noting the plaintiff's citation to the paper in French Ex. 2 and emphasizing that the paper still maintained that "vaccination [was] the most important strategy to prevent serve illness and death: and recommended "tak[ing] precautions *in addition to* the vaccine, not in lieu of"); *Federoff v. Geisinger Clinic*, 571 F.Supp.3d 376, 389 (M.D. Pa. 2021) (discussing the paper in French Ex. 3 and admonishing the plaintiffs for misconstruing the findings).

Viewing the facts in the light most favorable to Plaintiff, however, Defendant has not demonstrated that no reasonable jury could find for Plaintiff. Defendant presents two arguments to support its conclusion. Defendant puts forth evidence that case numbers were increasing to historically high levels due to the delta variant at the time of the vaccine mandate, Muller Decl. ¶¶ 22–23 (citing Exs. 17, 18, 19), 32 (citing Ex. 23); that COVID-19 transmission was still occurring despite preventative measures, *id.* ¶¶ 31, 24; that patient admissions were largely comprised of unvaccinated individuals, *id.* ¶ 33 (Exs. 24, 25); and that many patients were at such a heightened risk of infection that even commonplace items presented a significant health

7 – OPINION & ORDER

risk, *id.* ¶ 31. Defendant also concluded that having unvaccinated individuals work in-person was too great a health and safety risk, particularly given the hundreds of exception requests it received. *Id.* ¶ 30. But absent from the record is any evidence that Defendant made an inquiry into whether Plaintiff could be accommodated or what measures—if any—they considered.

> Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assesses the reasonableness of a particular accommodation or accommodations . . . Faced with an accommodation request like [the plaintiff's], it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute undue hardship. Consideration of other options . . . would also be necessary."

*See Groff*, 143 S.Ct. at 2296–97.

Here, the record is murky as to what other safety precautions or positions existed at the time, what accommodations were considered for Plaintiff, and why those would be an undue hardship on Defendant's business. *Cf. Bordeaux v. Lions Gate Ent., Inc.*, 703 F.Supp.3d 1117, 1134-37 (C.D. Cal. 2023) (finding that accommodating an actress's vaccine exception would place an undue burden on the defendant because of the increased risk she could transmit the virus to other individuals and the expense the defendants would incur implementing other protocols).[2] Plaintiff, for example, specifically identifies additional testing and working with PPE as possible safety measures, Compl. ¶ 21, but the record is ambiguous as to whether this was a protocol that was considered by Defendant, already in use at the time of the vaccine mandate, and why it would not be sufficient. While there's evidence that each protocol individually was not a sufficient replacement for vaccination, Cohen Decl. ¶¶ 34, , there's no evidence as to the burden

---

[2] Defendant has also provided supplemental authority to boost its argument. *See* Notices of Suppl. Authority, ECF 47, 48, 49. But, as the Supreme Court has cautioned, these cases are highly fact-specific, and the Court finds that on the facts of this case Defendant has not met its burden on summary judgment. *See Groff*, 143 S.Ct. at 2294 (emphasizing that whether an accommodation is an "undue hardship" is a "fact-specific inquiry").

8 – OPINION & ORDER

on Defendant from allowing Plaintiff to work while following various safety protocols in her particular role as a nurse case manager, *see Groff*, 143 S.Ct. at 2295 ("[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'").

Further, there's a dispute of fact as to whether Plaintiff could work remotely. Defendant puts forth evidence that Plaintiff's job duties were performed on-site. In her deposition, Plaintiff testified that she worked in the hospital every day from the beginning of the pandemic until the day she was put on leave, Pl. Dep. 55:19–56:6, and that many of her duties involved direct interaction with patients and coworkers, *id.* at 59:1–60:2. Plaintiff's supervisor further claims that meetings with patients, their families, and their care team are a "key component" of a nurse case manager's job responsibilities that must be performed on-site. Christopher Decl. ¶¶ 5, 7, ECF 17. But Plaintiff claims that her job duties could have been done remotely, Pl. Dep. 213:14–15 ("All of my work could have been done remote"."); West Decl. ¶ 1 (stating that she had an administrative position and that "[m]ost of [her] work did not involve any patient interaction"), ECF 24, and Plaintiff's supervisor states in her declaration that she has allowed employees to work remotely in the past, albeit on a temporary basis, Christopher Decl. ¶ 8 (stating that she has only allowed nurse care managers to work remotely "on a temporary basis when they suffered an injury and were temporarily immobile"). Further, there is insufficient evidence about the burden of remote work on Defendant specifically in the context of Plaintiff's position. *See* Christopher ¶ 7 (explaining generally that a "many" duties of a fully remote nurse case manager would fall on other physically present employees and the "quality of patient care would decrease if in-person conversations were not an option"). In sum, viewed in the light most favorable to

9 – OPINION & ORDER

Plaintiff, Defendant has not demonstrated that accommodating Plaintiff would have been a substantial burden in the overall context of its business. Accordingly, the Court denies Defendant's motion for summary judgment.

## CONCLUSION

The Court DENIES Defendant's Motion for Summary Judgment [15]. Defendant's Motion to Strike [30] is denied as moot.

IT IS SO ORDERED.

DATED: September 20, 2024.

MARCO A. HERNÁNDEZ
United States District Judge